RENDERED: AUGUST 18, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0204-DG

DELORES ZEPEDA                                              APPELLANT

V.                  ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-0650
SCOTT CIRCUIT COURT NO. 18-CI-00096

CENTRAL MOTORS, INC.                                      APPELLEE

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

Dolores Zepeda (Zepeda) was grievously wounded in an automobile accident on August 14, 2014, in Scott County. She filed a claim against Central Motors, Inc. (Central Motors) alleging it was the statutory owner of the 2002 BMW in which she was a passenger at the time of the accident. The trial court granted summary judgment in favor of Central Motors, holding it had substantially complied with KRS 186A.220 when it sold the vehicle to Juan Garcia (Garcia) and was no longer the statutory owner of the vehicle. Zepeda appealed and the Court of Appeals affirmed the lower court's ruling. Zepeda filed a motion for discretionary review which we granted. We affirm the Court of Appeals.

## I.    FACTS AND PROCEDURAL BACKGROUND

This appeal is solely concerned with determining the statutory ownership of the vehicle involved in the crash, the 2002 BMW, as between Garcia and Central Motors. Therefore, understanding the title and sales history of the vehicle is essential.

Elite Motors, of Clarksville, Tennessee, sold the vehicle to Kevin and Shantell Cook on August 23, 2012. Tennessee issued a certificate of title with a lien held by Elite Motors on August 24, 2012.  The Cooks defaulted on the loan and the vehicle was repossessed. Loan Portfolio Services bought the vehicle from Elite Motors on March 14, 2014.

Central Motors purchased the vehicle from Loan Portfolio Services in Tennessee on March 19, 2014 and brought the vehicle into Kentucky the same day. Central Motors did not file a notice of vehicle acquisition with the Fayette County Clerk within fifteen (15) days per KRS 186A.220(1).[1] The vehicle was inspected by Larry Van Diver on behalf of Central Motors on April 10, 2014.

Garcia purchased the vehicle from Central Motors on July 24, 2014 and executed a bill of sale, retail installment contract and security agreement for the purchase. As part of the transaction, Garcia also executed a power of

---

[1] KRS 186A.220(1) provides, as follows:

Except as otherwise provided in this chapter, when any motor vehicle dealer licensed in this state buys or accepts such a vehicle in trade, which has been previously registered or titled for use in this or another state, and which he holds for resale, he shall not be required to obtain a certificate of title for it, but shall, within fifteen (15) days after acquiring such vehicle, notify the county clerk of the assignment of the motor vehicle to his dealership and pay the required transferor fee.

attorney, designating Central Motors as his attorney-in-fact so it could deliver the assigned certificate of title and other documents to make the application for registration and certificate of title on Garcia's behalf per KRS 186A.220(5)(b).[2] Central Motors obtained proof of insurance from Garcia and then transferred physical possession of the vehicle to him on July 24, 2014.

On August 11, 2014, Central Motors paid the required fees and submitted an application for a Kentucky certificate of title and registration and delivered the assigned certificate of title from Tennessee to the Fayette County Clerk. Central Motors then filed a title lien statement with the Woodford County Clerk on August 13, 2014. Woodford was the county in which Garcia resided.

Juan Garcia was the father of Darley Morales (Morales). Though Morales did not possess a valid driver's license, Garcia let Morales drive the vehicle. On August 14, 2014, Morales was driving the 2002 BMW when he caused it to crash in a single vehicle accident. Morales had a blood alcohol level (BAC) of 0.145. The accident killed Morales and left his passenger, Zepeda, paralyzed. The title was issued in Garcia's name the next day on August 15th and the registration was completed on the 18th, three days later.

---

[2] KRS 186A.220(5)(b) provides,

> The dealer may, with the consent of the purchaser, deliver the assigned certificate of title, and other appropriate documents of a new or used vehicle, directly to the county clerk, and on behalf of the purchaser, make application for registration and a certificate of title. In so doing, the dealer shall require from the purchaser proof of insurance as mandated by KRS 304.39-080 before delivering possession of the vehicle.

Zepeda filed suit against the Estate of Morales seeking compensatory and punitive damages; against Garcia for negligent entrustment; against Allstate Property & Casualty Insurance Company (Allstate) for underinsured motorist coverage; and against Central Motors as the purported statutory owner of the vehicle.

Central Motors filed a motion for summary judgment and Zepeda filed a cross-motion for summary judgment. Zepeda alleged Central Motors, as the holder of the title, was the statutory owner of the vehicle because it had not filed a notice of vehicle acquisition form, the TC 96-183, which Zepeda claimed is required under KRS 186A.220(1).[3] After holding oral arguments, the trial court granted summary judgment for Central Motors and held it was not the owner of the vehicle at the time of the accident. The trial court ruled Central Motors had indeed failed to file the notice of vehicle acquisition form, the TC-96-183, with the Fayette County Clerk after purchasing the vehicle. But it had substantially complied with the statute when it submitted an application for certificate of title along with the previous title. The trial court reasoned Central Motors provided notice under KRS 186A.220(1) to the Fayette County Clerk when it submitted the aforementioned documents. Therefore, the trial court reasoned, under this Court's decision in *Travelers Indem. Co. v. Armstrong,* 565 S.W.3d 550 (Ky. 2018), that there was substantial compliance with KRS 186A.220.

---

[3] The Kentucky Transportation Cabinet provides a form, the "TC 96-183." The plain language of KRS 186A.220(1) does not require the use of this form, only that the dealer notify the county clerk and pay the required fees.

4

Zepeda appealed.  The Court of Appeals affirmed the lower court ruling on the same grounds citing *Travelers.*  Zepeda filed a motion for discretionary review which we granted.  We now address the merits of the appeal.

## II.    Analysis

Zepeda contends the Court of Appeals erred when it affirmed the lower court's summary judgment.  She argues that even under the standard of substantial compliance as allowed by *Travelers,* Central Motors failed to comply with the requirements as set forth in KRS 186A.220.[4] Since Zepeda also filed a motion for summary judgment, she is not arguing that summary judgment was inappropriate, only that the lower court's ruling was in error.  Because summary judgment is reached as a matter of law and there are no material facts that are in dispute, the standard of review on appeal is *de novo. Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky. App. 1996).

The sole issue in this appeal is to determine whether the lower courts correctly determined the statutory owner of the 2002 BMW on the date of the accident on August 14, 2014.  "Owner" is defined by KRS 186.010(7)(a):

> a person who holds the legal title of a vehicle or a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest.

In this case Central Motors was the title holder but Garcia had received physical possession of the BMW pursuant to a bona fide sale on July 24, 2014. KRS 186.010(7)(c) states:

---

[4] Zepeda concedes in her brief on page 7 that Central Motors complied with KRS 186A.220(2)-(4).

> A licensed motor vehicle dealer who transfers physical possession of a motor vehicle to a purchaser pursuant to a bona fide sale, and complies with the requirements of KRS 186A.220, shall not be deemed the owner of that motor vehicle solely due to an assignment to his dealership or a certificate of title in the dealership's name. Rather, under these circumstances, ownership shall transfer upon delivery of the vehicle to the purchaser. . . .

Despite Kentucky being a certificate of title state for the purpose of determining ownership and for requiring liability insurance coverage, KRS 186.010(7)(c) provides an exception to the general rule. *Travelers,* 565 S.W.3d at 556 (citing *Auto Acceptance Corp. v. T.I.G. Ins. Co.,* 89 S.W.3d 398, 401 (Ky. 2002)). If a licensed motor vehicle dealer delivers physical possession to the buyer and complies with KRS 186A.220 then ownership transfers upon physical delivery of the vehicle. *Id.* at 557.

Compliance with KRS 186A.220 requires licensed motor vehicle dealers to perform certain acts to take advantage of this statutory exception. However, our decision in *Travelers* makes it clear that substantial compliance with the statute is sufficient for the exemption to apply. As this Court explained:

> By violating the strict requirements of the provisions (namely, the 15 day requirement) but still accomplishing the goal (notifying the clerk of the acquisition of the vehicle), the intention of the statute is still upheld. We note that, in describing this statute as directory, this does not mean non-compliance is permissible. If the dealer fails to comply, at all, then there is no compliance with KRS 186A.220 and the dealer is still the "owner." However, substantial compliance, *i.e.,* late compliance, may still allow the dealer to take advantage of the exception in KRS 186.010(7)(c).

*Travelers,* 565 S.W.3d at 567.

Zepeda argues since Central Motors did not file the "TC 96-183" it should be considered the statutory owner. The statute does not mention this form nor

6

require any specific form. It is undisputed that Central Motors never filed the form the Transportation Department provides, the "TC 96-183," but KRS 186A.220(1) requires only that the dealer "notify the county clerk of the assignment of the motor vehicle to his dealership and pay the required transferor fee."  Our decision in *Travelers* is clearly focused on accomplishing the intention of the legislature. The purpose of the KRS 186A.220(1) is:

> to effectuate an efficient registration and titling process. If a dealer complies with these requirements late, it does not vitiate the overarching goal. Thus, the statute is directory and substantial compliance is sufficient for those sections. A licensed dealer, therefore, can cure an untimely compliance with KRS 186A.220, sections 1 through 4, by complying at a later date. If an accident occurs *before* the dealer has complied (in which case, at that point, there would be *no* compliance rather than substantial compliance), that dealer will still be the statutory "owner" of the vehicle. If the dealer has complied before the accident, it can still avail itself of the exception in KRS 186.010(7)(c).

*Id*. Zepeda's approach imposes a requirement simply not found in the plain text of the statute. This elevates form over substance, an approach this Court rejected in *Travelers.*  The Fayette County Clerk's office was notified of Central Motors's acquisition of the BMW because the dealership had submitted the assigned certificate of title from Tennessee and application for certificate of title on August 11, 2014, prior to the accident. At that point, Central Motors had substantially complied with KRS 186A.220.

Zepeda also makes much of the fact that Central Motors did not pay the fee that KRS 186A.220(1) requires when a dealer notifies the county clerk. This is clearly a requirement of the statute, but it is the responsibility of the county clerk's office to collect those fees. Its failure to do so should not

preclude a party from transferring ownership, nor does it negate that notification had been sufficiently given.

Zepeda also contends that the transfer of the ownership was not complete until the certificate of title was delivered to Garcia. The earliest possible date that could have occurred, Zepeda argues, was August 15, the date the certificate of title was issued which was one day after the accident. Zepeda urges this court to apply the holding of this Court's decision in *Nantz v. Lexington Lincoln Mercury Subaru,* 947 S.W.2d 36, 37 (Ky. 1997) to this case. Zepeda points to the holding of *Nantz* and KRS 186A.220(5)(a),[5] and (d),[6] which state ownership transfers upon delivery of the documents to the buyer. But Zepeda ignores the multiple changes made to these statutes since 1994. The General Assembly amended this statute in 1994 and again in 2016. The issues this Court decided in *Nantz* were governed by the pre-1994 statute. Subsection 5(b), the applicable subsection in this case, became law in 1994. Subsection 5(d) was also not in effect at the time of the accident. It was enacted in 2016. KRS 186A.220(5)(b) states:

> The dealer may, with the consent of the purchaser, deliver the assigned certificate of title, and other appropriate documents of a new or used vehicle, directly to the county clerk, and on behalf of the purchaser, make application for registration and a certificate of title. In so doing, the dealer shall require from the purchaser proof

---

[5] Subsection (5)(a) states, "[W]hen a dealer assigns the vehicle to a purchaser for use, he shall deliver the properly assigned certificate of title, and other documents if appropriate, to such purchaser, who shall make application for registration and a certificate of title thereon."

[6] Subsection (5)(d) states, "[W]hen a dealer assigns a vehicle to a purchaser for use under paragraph (a) of this subsection, the transfer and delivery of the vehicle is effective immediately upon the delivery of all necessary legal documents, or copies thereof, including proof of insurance as mandated by KRS 304.39-080."

of insurance as mandated by KRS 304.39-080 before delivering possession of the vehicle.

Garcia appointed Central Motors as his attorney-in-fact at the time of purchase to effectuate the transfer of ownership and delivered the documents directly to the county clerk as allowed by subsection 5(b). Central Motors delivered all the required documents on August 11, 2014, and the new certificate of title was processed the same day, several days before the accident. Subsection 5(d), which states the transfer is "immediately upon delivery of all necessary legal documents," is explicitly conditioned upon adherence to subsection 5(a). That subsection applies only where the <u>purchaser</u> is to make the application for certificate of title and registration.

Zepeda's erroneous reliance on *Nantz* also ignores KRS 186.010(7) which was also amended in 1994. The definition of owner under KRS 186.010(7)(a) was modified. The current definition, with the 1994 amendment in bold, is:

> "Owner" means a person who holds the legal title of a vehicle **or a person who pursuant to a bona fide sale has received physical possession of the vehicle subject to any applicable security interest.**

The General Assembly also added a new subsection in 1994 that applies to licensed motor vehicle dealers which we cite here once more. KRS 186.010(7)(c) states:

> A licensed motor vehicle dealer who transfers physical possession of a motor vehicle to a purchaser pursuant to a bona fide sale, and complies with the requirements of KRS 186A.220, shall not be deemed the owner of that motor vehicle solely due to an assignment to his dealership or a certificate of title in the dealership's name. Rather, under these circumstances, **ownership shall transfer upon delivery of the vehicle to the purchaser**. . . .

9

(Emphasis added). At the time of the accident Central Motors, a licensed motor vehicle dealer, had submitted all the required documents to the Fayette County Clerk, obtained proof of insurance from Garcia, and notified the County Clerk of its acquisition of the vehicle before the crash occurred. Therefore, Central Motors substantially complied with KRS 186A.220 and transferred physical possession of the vehicle pursuant to a bona fide sale. As such, Central Motors was not the statutory owner of the vehicle on the date of the accident.

### III.   CONCLUSION

The Court of Appeals correctly affirmed the summary judgment of the Scott County Circuit Court which held that Garcia was the statutory owner of the vehicle at the time of the accident on August 14, 2014. Based on this Court's decision in *Travelers,* we affirm the Court of Appeals and hold Central Motors substantially complied with KRS 186A.220 and delivered possession of the vehicle pursuant to a bona fide sale, thereby making Garcia the statutory owner of the vehicle.

Minton, C.J., Keller, Lambert, Nickell, VanMeter, JJ., sitting. All concur. Hughes, J., not sitting.

COUNSEL FOR APPELLANT:

Joseph Rugg
David Noble
Morgan & Morgan, PLLC

COUNSEL FOR APPELLEE:

R. Craig Reinhardt
Reinhardt & Associates, PLC